## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION AT LAFAYETTE

MICHAEL E. AMBERS,              )
                               )
              Plaintiff,        )
                               )        Cause No. 4:24-CV-51-PPS-AZ
        vs.                     )
                               )
COUNTY OF TIPPECANOE,           )
Indiana, *et al.*,              )
                               )
              Defendants.       )

## OPINION AND ORDER

Plaintiff, Michael Ambers, alleges he suffered serious injury when a corrections employee used excessive force while he was in the work release program. All of the named defendants (except Officer Jared Davis who hasn't been properly served yet) have moved to dismiss the claims against them. For the reasons articulated below, the motion to dismiss is granted in part and denied in part.

### Background

As usual, I will first set out the facts as they are described in the complaint, which I will accept as true for present purposes. At the time of the incident, Ambers was on pretrial release with the Tippecanoe County Community Corrections, and housed at the Tippecanoe County Community Corrections Work Release facility. [Compl., DE 1, at 2.] Around July 6, 2023, Ambers was scheduled to begin work at a cab company in Lafayette, Indiana, as part of the TCCC Work Release program, "but was not allowed to leave the TCCC facility because Ambers missed a drug screen." [*Id.* at 5.]

Ambers alleges that while at the TCCC facility, Officer Jared Davis "handcuffed Ambers behind his back and began to escort Ambers back to a holding cell.  As they approached the door exiting the dayroom, [Officer Davis] used unjustifiable excessive and unnecessary force with Mike Ambers, driving Ambers' head into a concrete wall to the point of injury and unconsciousness, for no reason, then picked up and threw unconscious Ambers to the ground." *Id.*  Four officers, including Officer Davis, then carried the unconscious Ambers to a holding cell.  *Id.*  Plaintiff alleges he suffered serious and permanent injury, including loss of consciousness, concussion/brain injury, contusions, a left wrist fracture, a broken tooth, bleeding, facial fractures, and pain. [*Id.* at 5-6.]

The complaint sets forth seven different Counts: an excessive force claim under section 1983 against Officer Davis (Count 1); a claim against Sheriff Goldsmith under *Monell* (Count 2); a section 1983 conspiracy claim against Officers Davis, Jones, Pettet, and Tom (Count 3); state law claims of assault and battery against Officer Davis and the County of Tippecanoe via respondeat superior (Count 4); a state law claim of excessive force against Defendant Davis and the County of Tippecanoe via respondeat superior (Count 5); a state law claim for intentional infliction of emotional distress against Davis and the County of Tippecanoe (Count 6); and a state law claim of negligent hiring, training and supervision against Sheriff Goldsmith (Count 7).

All of the defendants except Officer Davis[1] have filed the instant motion to dismiss, and ask the Court to dismiss Count 2 because the allegations are based on merely conclusory allegations, Count 3 because there is no Constitutional right to an accurate incident report, and the state law claims in Counts 4-7 because the Indiana Tort Claims Act provides immunity to the defendants under Indiana Code 34-13-3-3(a)(17).

## Discussion

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by purely conclusory statements.  *See Iqbal*, 556 U.S. at 678.  Ambers must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

---

[1] Officer Davis has not yet been served.  Plaintiff moved for an extension of time and received an extension for service up until December 30, 2024. [DE 27, 28.]

I.    **Whether Indiana Code 34-13-3-3(a)(17)(B) Provides Immunity to Defendants on the State Law Tort Claims (Counts 4-7)**

Defendants first argue that the state law claims (Counts 4-7) should be dismissed because the Indiana Tort Claims Act (ITCA) provides immunity to all defendants under Indiana Code 34-13-3-3(a)(17). [DE 19 at 3, 5-7.]  In response, Ambers insists he "has not brought state law negligence claims against Defendants Jones, Pettet or Tom" or any claims against those defendants in their official capacities; therefore, those defendants can't be dismissed from the cause of action pursuant to § 34-13-3-3(a)(17)(B). [DE 26 at 8-10.]  First, this isn't exactly an accurate statement as Ambers *did* bring a state law claim of negligent hiring, training and supervision against Sheriff Goldsmith in Count 7. [DE 1 at 19.]  Let's turn to each count and analyze whether the ITCA provides immunity for that claim.

A.    **Count 7 (Negligence)**

Let's look at Count 7, the negligence claim, first.  Indiana Code Section 34-13-3-3(a)(17)(B) provides "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss arises from" an "[i]njury to the person under supervision of a governmental entity" and who is  assigned to "a community corrections program."  As the Indiana Court of Appeals has put it, "the Tort Claims Act contains an unequivocal affirmative statement that clearly evinces the legislature's intention *not* to subject the State or local government to suit by persons . . . under the supervision of a governmental entity while on probation or assigned to a community corrections program." *Buchanan v. State*, 122 N.E.3d 969, 973  (Ind. Ct. App. 2019)

(emphasis in original) (affirming dismissal).

Ambers asserts that a motion to dismiss is not an appropriate vehicle for an immunity determination. [DE 26 at 9-10.]  But this just isn't true.  Plenty of cases have correctly dismissed claims under the ITCA where the complaint makes it plain that ITCA immunity applies.  These are essentially cases where the plaintiff pleads himself out of court.  *See, e.g., Bostic v. Radiceski,* 2:15-CV-429, 2016 WL 5394472, at *2 (N.D. Ind. Sept. 27, 2016) (dismissing claims against probation officer and other state defendants because "the court finds that the ITCA immunizes the State Defendants from any negligence claim by plaintiff in this case."); *Strain v. Minnick*, No. 2:14-cv-374-WTL-WGH, 2015 WL 6550628, at *4 (S.D. Ind. Oct. 28, 2015) (dismissing claims for negligence and negligent infliction of emotional distress because of law enforcement immunity under the ITCA).

Ambers' state law claim of negligent hiring, training, and/or supervision found in Count 7 arises from injuries sustained under the supervision of a governmental entity while assigned to a community corrections program, which is specifically granted immunity under IC 34-13-3-3(a)(17)(B).  Therefore, this claim must be dismissed as to Sheriff Goldsmith.

### B.    Count 6 (intentional infliction of emotional distress)

There also is plenty of case law that provides that intentional infliction of emotional distress claims cannot proceed due to the immunities provided by the ITCA. *See Freeman v. Indiana*, No. 1:17-CV-317-TLS, 2018 WL 2268139, at *2 (N.D. Ind. May 17,

2018) (finding ITCA provides immunity to claims for intentional infliction of emotional distress); *see also Doe v. Gray*, No. 3:20-cv-129-DRL-MGG, 2020 WL 3868702, at *1-2 (N.D. Ind. July 8, 2020) (finding "[w]hether immunity applies under the ITCA is a question of law for the court" and dismissing intentional infliction of emotional distress claim*)*; *Ashcraft v. City of Crown Point*, No. 2:13-CV-080 JD, 2013 WL 5934612, at *6 (N.D. Ind. Nov. 5, 2013) (recognizing that "courts applying Indiana law have specifically dismissed" claims for intentional infliction of emotional distress under the ITCA); *Kocon v. Lake Cnty. Sheriff's Dep't*, No. 2:06-cv-13-PRC, 2007 WL 1959239, at *11 (N.D. Ind. June 29, 2007) (finding ITCA did not include exemptions from law enforcement immunity for claims of intentional infliction of emotional distress).

Therefore, Count 6 for intentional infliction of emotional distress will be dismissed as to the moving Defendants (but remains pending as to Officer Davis who is not a party to the motion to dismiss).

### C.    Count 4 (Assault and Battery) and Count 5 (Excessive Force)

"The party seeking immunity bears the burden of proving that its conduct falls within the provisions of the ITCA." *Schon v. Frantz*, 156 N.E.3d 692, 699 (Ind. Ct. App. 2020). In the case of the state law claims for assault and battery and excessive force, the Defendants have not proved that these fall within the immunity protection of the ITCA.

It is well established that ITCA immunity does not apply to claims of assault, battery, and excessive force. *Wilson v. Isaacs*, 929 N.E.2d 200, 204 (Ind. 2010). In *Kemezy v. Peters*, the Supreme Court of Indiana declared "the use of excessive force is not

conduct immunized" by the "enforcement of a law" immunity of the Indiana Tort

Claims Act.  622 N.E.2d 1296, 1297 (Ind. 1993).  And as the Southern District of Indiana

recognized, "[u]nless and until the Indiana Supreme Court overrules *Kemezy*, we cannot

conclude as a matter of law that Defendants are immune from liability for [plaintiff's]

battery claim based solely on the ITCA." *Rising-Moore v. Wilson*, No. 1:03-CV-1813-SEB-

VSS, 2005 WL 1607187, at *12 (S.D. Ind. July 7, 2005); *see also Franklin v. Randolph Cnty.*

*Comm'rs*, No. 1:18-cv-01340-JMS-DML, 2019 WL 3037181, at *10 ("Put simply, the ITCA

provides no immunity for excessive force claims.").

> For this reason, Count 4 for assault and battery and Count 5 for use of excessive

force are not cloaked in immunity and will not be dismissed.

## II.    Whether Dismissal is Proper on Count 3 for Section 1983 Conspiracy

> Defendants Jones, Pettet, and Tom (correctional officers who were working in the

scope of their employment at Community Corrections) are sued in Count 3 which is

labeled "conspiracy brought pursuant to 42 U.S.C. § 1983 Against the Defendant

Officers." [DE 1 at 13.] Ambers alleges their failure to create complete and accurate

incident reports arose from a conspiracy with Defendant Davis to cover up the alleged

misconduct of Davis. [*Id.* at 14.]  Specifically, the complaint alleges that Officers Jones,

Pettet, and Tom made factual errors and/or omissions in their incident reports to cover

up Officer Davis' use of excessive force. *Id.*

> The Seventh Circuit has recognized that there is no constitutional right to a

particular level of governmental investigation.  In other words, "not every act of

deception in connection with a judicial proceeding gives rise to a constitutional action."
*Vasquez v. Hernandez*, 60 F.3d 325, 328-29 (7th Cir. 1995). Indeed, an individual does not
have a Constitutional right to have his case investigated at all, let alone to his level of
satisfaction. *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015).

In response to the motion to dismiss, Ambers suggests his claim under this count
is really one for denial of judicial access. [DE 26 at 10.] But there are no plausible
allegations in the complaint that Ambers has been deprived of judicial access to the
courts. The complaint alleges the officers "had a duty to create a complete and accurate
incident report when memorializing the occurrence," they made "factual errors and/or
omissions in their respective incident reports concerning the excessive and/or
unnecessary force used by [Officer Davis]," and they conspired with Officer Davis "by
generating false documentation to cover up" Officer Davis' actions. [DE 1 at 14.] None
of these facts support the argument that Ambers was denied judicial access.

In his brief, Ambers points to the tort claim notice he sent out back in December
2023, which alleges that "Officer J.D. Shirar" was the officer who used excessive force
on Ambers. [DE 26 at 11; DE 1-1 at 2.] For the first time, in his memorandum, Ambers
claims this person by the name "Officer J.D. Shirar" was intentionally misidentified, in a
supposed attempt to throw Plaintiff off the trail of Officer Davis, and send them on a
"wild goose chase." [DE 26 at 11.] But this is a newly asserted fact that is not in the
complaint, plus Plaintiff doesn't claim that the name "Officer J.D. Shirar" was a name
that appeared in the reports of Jones, Pettet or Tom – just that someone misidentified

this person to Ambers, who then used his name in the tort claim notice. *Id.* This still doesn't plausibly establish a claim for deprivation of judicial access.

Then, Ambers suggests that summary judgment is a proper vehicle for testing the legal sufficiency of this claim. [DE 26 at 11.] But courts absolutely do dismiss access to the courts claims at the 12(b)(6) stage in handling motions to dismiss. *See, e.g.,* *Thompson v. Boggs*, 33 F.3d 847, 850, 852-53 (7th Cir. 1994) (affirming dismissal of access to court claim that officers withheld key facts in their reports because the plaintiff had firsthand knowledge of facts sufficient to allow him to promptly file a lawsuit); *Van Dalsen v. Roswarski*, No. 4:23-CV-015-PPS-JEM, 2023 WL 7686227, at *4-5 (N.D. Ind. Nov. 15, 2023) (finding allegations of a police cover-up didn't state a constitutional claim absent a narrow set of circumstances involving egregious failures subverting the truth to a degree that amounts to fundamental denial of judicial access); *Murphy v. Smith*, No. 12-cv-841-MJR-SCW, 2014 WL 12683572, at *1-3 (S.D. Ill. Oct. 9, 2014) (dismissing 14th Amendment conspiracy claim where jailers allegedly made false reports about the need for use of force and inmates injuries, where the reports didn't hinder the inmate's ability to bring suit).

At base, even if Ambers' allegations are true and Defendants Jones, Pettet, and Tom intentionally wrote deceptive incident reports, Ambers was not deprived of access to the courts (as plainly evidenced by this lawsuit). *See, e.g., Johnson v. Chicago Police Officer*, No. 99 C 7396, 2000 WL 310320, at *2 (ND. Ill. Mar. 4, 2000) (without evidence that the cover-up thwarted a plaintiff's attempts to bring suit or somehow reduced the

value of the suit, there is no Section 1983 conspiracy claim because there is no injury over and above the underlying torts). Therefore, Count 3 will be dismissed without prejudice as to the moving Defendants.

### III.    Plaintiff Agrees that Count 2 Should be Dismissed

Finally, Defendants move to dismiss the *Monell* claim against Sheriff Goldsmith, arguing the facts in the complaint look almost identical to a complaint against Cook County several years ago. [DE 19 at 8-12.] Plaintiff concedes that the *Monell* claim against Sheriff Goldsmith (Count 2) should be dismissed [DE 26 at 13]; therefore, the Court will dismiss it without prejudice.

### Conclusion

For all of the above-mentioned reasons, Defendants' Motion to Dismiss [DE 18] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as follows: the Clerk is ORDERED to DISMISS Count 2 against Sheriff Goldsmith; Counts 3, 6, and 7 are also ORDERED DISMISSED as to the moving defendants (Officers Jones, Pettet, and Tom; and the County of Tippecanoe through its Commissioners, Thomas Murtaugh, David Byers, and Tracy Brown). The dismissals will be WITHOUT PREJUDICE. If Plaintiff believes he can cure the deficiencies in his complaint pointed out in this opinion, he may file an amended complaint within 30 days.

The Motion to Dismiss [DE 18] is DENIED as to the following claims: Counts 4 and 5 which remain pending against the County of Tippecanoe through its Commissioners, Thomas Murtaugh, David Byers, and Tracy Brown.

All claims against Officer Jared Davis, who was not a party to the instant motion, REMAIN PENDING (including Count 1 and the claims against Davis articulated in Counts 3 - 6).

**SO ORDERED**.

ENTERED: November 13, 2024

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT